IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARCO JULIO MEMBRENO,<br><br>    Petitioner,<br><br>v.<br><br>JAMES MICHAEL HOLLOWAY,<br><br>    Respondent. | NO. 3:21-cv-00345<br><br>JUDGE RICHARDSON |

## **MEMORANDUM OPINION AND ORDER**

### **INTRODUCTION**

Marco Julio Membreno, an inmate at DeBerry Special Needs Facility in Nashville, Tennessee, has filed a pro se petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) and has paid the filing fee. (Doc. No. 4.)

Upon initial review of the petition, the Court directed Respondent to file the state-court record and to respond to Petitioner's claims. (Doc. No. 6.) Respondent filed the state-court record (Doc. No. 7-1) on June 2, 2021, followed by a Motion to Dismiss the petition as untimely (Doc. No. 8) and a memorandum in support of the motion (Doc. No. 9). Petitioner filed a response to the Motion (Doc. No. 10), to which Respondent filed a reply (Doc. No. 11). Petitioner then filed an additional response, which the Court construes as a sur-reply. (Doc. No. 12.)

Review of these filings and the record reveals that an evidentiary hearing is not needed in this matter. *See Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) (stating that evidentiary hearing is not required "if the record clearly indicates that the petitioner's claims are either barred from review or without merit"). Therefore, the Court shall dispose of the petition as the law and

justice require. Rule 8, Rules Gov'g § 2254 Cases. As explained below, this action is untimely and will be dismissed on that basis.

## BACKGROUND

Petitioner is serving a prison sentence for aggravated rape. He was known to his victim, who described him as a friend of her ex-boyfriend and identified him by name to police when she reported the crime on July 18, 2009. (Doc. No. 1 at 18; Doc. No. 7-1 at 1.) Petitioner was arrested on July 20, 2009, when he returned to the victim's apartment complex and was approached by police officers who called him by name. (Doc. No. 7-1 at 3.) According to an "Official Serology/DNA Report" produced by the Tennessee Bureau of Investigation on September 3, 2009, biological samples collected contemporaneously from the victim revealed the presence of semen, and DNA testing would be performed "upon request of the District Attorney General." (Doc. No. 1 at 16–17.)[1]

Petitioner was indicted by the Davidson County Grand Jury on November 20, 2009, on charges of aggravated rape (2 counts), aggravated burglary, and resisting arrest. (Doc. No. 7-1 at 4–8.) On October 29, 2010, Petitioner was convicted upon his plea of guilty to one count of aggravated rape, for which he received a 15-year prison sentence. (Doc. No. 1 at 1; Doc. No. 7-1 at 14.) Under his plea bargain, the State dismissed the remaining charges against Petitioner. (Doc. No. 7-1 at 9–20.) Petitioner did not seek to withdraw his plea or file an appeal, nor did he file any post-conviction or other petition in state court for collateral review of his conviction.

On April 28, 2021, Petitioner filed the instant petition under Section 2254, challenging the validity of his plea based on his claim that defense counsel misled him by telling him the State had

---

[1] It is not clear from the record before this Court whether DNA testing was subsequently requested and performed, but only that such testing was not performed in conjunction with the September 3, 2009 serology report.

DNA evidence linking him to the crime, when in fact no such evidence existed. (Doc. No. 1 at 5; Doc. No. 5.) He explains his failure to exhaust state remedies as follows:

> At the time of my arrest and incarceration I did not speak, read, or write English. So, I trusted my Public Defender, Katie Weiss who told me that they had DNA proof linking me to the crime. But, after learning to read, write, and speak English, I filed for my Discovery and after reviewing the Discovery of the State, I realized I had been lied to.

(Doc. No. 1 at 5.) Other than the three times his counsel came to visit him in jail with an interpreter, Petitioner did not have access to an interpreter or a Spanish-speaking legal aide while incarcerated. (*See* Doc. No. 12 at 1–3.) Accordingly, Petitioner claims that, until "recently," he was unaware of the grounds for his petition revealed in his criminal discovery. (*Id.* at 13.)

## ANALYSIS

I. <u>Timeliness of the Petition</u>

Habeas corpus petitions under Section 2254 are subject to a particular statute of limitations,[2] which prescribes a one-year limitations period that "run[s] from the latest of":

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[2] What the undersigned wrote years ago still holds true and applies herein:

> On the subject of limitations, courts often use language loosely, interchanging various terms for one another.[fn deleted] For maximum clarity, terms must be defined so that important concepts are distinguishable from one another, then used consistently in accordance with those definitions. . . .
>
> As used herein, a "statute of limitations" refers to a legislative enactment, or codification thereof, that sets forth a limitations period. . . . A "limitations period" refers to the length of time-the specific number of days, months, or years-in which a given claim can be commenced, as set forth in a statute of limitations.

Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1017–19 (1997).

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Holland v. Florida*, 560 U.S. 631, 635 (2010). In most cases, the limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," under Section 2244(d)(1)(A). Respondent presumes that Section 2244(d)(1)(A) applies in the case at bar. But Petitioner's filings conceivably could be construed as arguing that his discovery of the factual predicate of his claim—the absence of DNA test results linking him to the victim or crime scene—marks the beginning of the running of the limitations period under Section 2244(d)(1)(D). (*See* Doc. No. 10 at 1 (asserting that, "had he known of no DNA or lack thereof, he would have timely filed a petition").)

Petitioner's express argument that the limitations period should be "tolled" until he made this discovery in April of 2021 (Doc. No. 12 at 3–4) can reasonably be interpreted as seeking to delay the beginning of the running of the limitations period until that time, rather than to stop the running of the limitations period for some period of time (ending in April 2021) *after* it had already started to run.[3] So framed, the argument implicitly seeks tolling by operation of the statute, Section

---

[3] As the undersigned has previously observed:

> The term "tolling" is used two different ways. Sometimes when a court refers to tolling, it is referring to postponement of the date the statute begins to run, usually the accrual date. By contrast, some courts use the term "tolling" to refer to suspending the running of the limitations period after it already has begun to run. Some tolling provisions cannot be placed comfortably in either tolling category, and some tolling provisions can either postpone the starting of the clock or stop it after it begins running, depending upon the timing of the event that triggers the tolling. Nevertheless, the distinction exists and is analytically important.

Richardson, *Eliminating the Limitations of Limitations Law*, *supra*, at 1039–40.

2244(d)(1)(D), to delay the date on which the limitations period otherwise would begin running, on a theory that Petitioner could not have known of his habeas claim prior to his recent request for his criminal discovery and the serology report it contained. However, "the time commences under § 2244(d)(1)(D) when the factual predicate for a habeas petitioner's claim could have been discovered through the exercise of due diligence, not when it was actually discovered by a given petitioner." *Kalak v. Berghuis*, No. 2:11-CV-12476, 2015 WL 2169785, at *4 (E.D. Mich. May 8, 2015) (citing *Redmond v. Jackson*, 295 F. Supp. 2d 767, 771 (E.D. Mich. 2003)); *see Townsend v. Lafler*, 99 F. App'x 606, 608 (6th Cir. 2004) ("The question under [Section 2244(d)(1)(D)] is not when prisoners first learned of the new evidence; it is when they should have learned of the new evidence had they exercised reasonable care.").

The factual predicate of Petitioner's claim (which is described immediately below) could have been discovered prior to the time of his guilty plea, after he learned from counsel (via an interpreter) that the State had obtained "DNA proof linking [him] to the crime." (Doc. No. 1 at 5.) It is awareness of "vital facts for his claim," rather than understanding of "the legal significance of those facts," that drives the determination of "when a duly diligent person in petitioner's circumstances would have discovered the factual predicate for his claim." *Smith v. Meko*, 709 F. App'x 341, 344 (6th Cir. 2017) (quoting, *e.g.*, *DiCenzi v. Rose*, 452 F.3d 465, 470 (6th Cir. 2006)). Petitioner's claim is that counsel's statement was untrue—i.e., that contrary to counsel's statement, the State in fact did not possess DNA proof linking him to the crime—and that his guilty plea was therefore not fully or accurately informed. Once counsel communicated to Petitioner that DNA evidence corroborating the victim's accusation of him (supposedly) had been obtained, Petitioner was presented with the information—namely, that he had been identified as the perpetrator by forensic evidence in addition to the victim's testimony—that would have led a duly diligent person

in his circumstances to discover the factual predicate for his habeas claim that counsel's statement was untrue. For these purposes, the fact that this information was communicated to Petitioner is the vital fact for his habeas claim, regardless of whether the State had actually obtained evidence of a DNA match at the time of the communication.

In the strikingly similar case of *Maddox v. Cain*, No. CIV.A. 06-1543, 2006 WL 3589570 (W.D. La. Nov. 20, 2006), the district court considered the timeliness under Section 2244(d)(1)(D) of a petition claiming that the petitioner's guilty plea was not voluntary or intelligent since it was based on defense counsel's statement that the State's ballistics test revealed a "match" between the bullet found in the victim and the gun fired by the petitioner, when in fact the ballistics report stated that the bullet "could not be marked for positive identification" but was merely consistent with the gun used in the shooting, and the petitioner only read the report for himself after receiving his criminal file from his attorney more than a year later. *Id.* at *2–3, 5. Notwithstanding the petitioner's failure to discover this discrepancy prior to pleading guilty, the court found "that the ballistics issue was known, at least by counsel, during the plea negotiations," and that "that knowledge must be imputed to petitioner." *Id.* at *6. The court further found that "petitioner's attorney had possession of the ballistics evidence prior to the date petitioner pled guilty," and that, although petitioner did not see the evidence until he received his criminal file, "there can be no question but that the documents were wholly available to petitioner, that he was, or should have been aware of the inconclusive nature of the evidence, and that the evidence *could* have been discovered with the exercise of due diligence long before the date petitioner claims to have discovered them." *Id.* (emphasis in original).

Analogously, in *Santiago v. Barone*, No. CIV.A. 10-649, 2012 WL 6151748, at *2–3 (E.D. Pa. Dec. 10, 2012), the district court recognized that, for purposes of a habeas claim based on a

prosecution witness recanting his trial testimony years after the petitioner's conviction became final, "the vital fact undergirding [the petitioner's] claim was the fact [the witness] had lied at trial, not the fact he later recanted his trial testimony." *Id.* at *2. The court determined that the petitioner "would have been aware [of]" this underlying fact at the time of trial if he was not involved in the crime as he claimed, and found that petitioner could have discovered the factual predicate of his habeas claim earlier if he had been diligent in seeking to challenge the evidence against him, rather than waiting years before he made any such efforts. *Id.* at *2–3 (citing *Sistrunk v. Rozum*, 674 F.3d 181, 188–89 (3d Cir. 2012) (rejecting argument that petitioner could not have known underlying vital facts until witness who testified falsely revealed that his testimony was untruthful years later)).

Likewise, in the case at bar, Petitioner did not proceed with reasonable diligence by waiting until years later to investigate the truth or falsity of the statement that the State had obtained DNA evidence against him; the demand of due diligence was that any investigation into the reported DNA match be conducted at or near the time it was revealed to Petitioner, when he had access to an attorney and an interpreter and, through them, access to whatever forensic test results had been obtained. *See Vinson v. Jackson*, 711 F. App'x 329, 333 (6th Cir. 2018) (holding that, because petitioner knew that serological test of whether he was a "secretor" was performed prior to criminal trial, his "status as a secretor or a non-secretor was a discoverable fact at th[at] time" through exercise of due diligence), *Bryant v. Thomas*, 274 F. Supp. 3d 166, 181 (S.D.N.Y. 2017) (holding that petitioner who "was aware that serological evidence existed" and implicated him, but who waited 30 years to further investigate accuracy of that evidence, could not establish due diligence under § 2244(d)(1)(D) regardless of fact that he was hindered by low I.Q.; "Due diligence is an objective test" that does not "consider subjective factors like a petitioner's intelligence, education,

language skills, or mental stability." (citations and internal quotation marks omitted)); *Holden v. Addison*, No. CIV-14-174-D, 2015 WL 1516401, at *7 (W.D. Okla. Mar. 31, 2015) (rejecting assertion "that plea counsel's alleged misrepresentation" that "the State had a [DNA] 'match'" could not have been discovered until petitioner "inquir[ed] and allegedly obtained a copy of the . . . laboratory report," since petitioner knew of the report's existence and potential significance at the time of his plea and did not "adequately explain the lengthy delay before reviewing the DNA evidence" himself). To find otherwise would be to endorse a "willingness to accept no diligence at all" in response to the revelation that allegedly prompted Petitioner's decision to plead guilty, even though "[b]y its terms, section 2244(d)(1)(D) requires diligence." *Shorter v. Richard*, 659 F. App'x 227, 230–31 (6th Cir. 2016) (citations and internal quotation marks omitted).

Accordingly, because "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence" prior to Petitioner's guilty plea, Section 2244(d)(1)(D) does not provide the latest date on which the limitations period could have started to run. As subsections (d)(1)(B) and (C) are not implicated in this case, the latest that Petitioner's limitations period could have started to run is the date on which the judgment against him became final, pursuant to Section 2244(d)(1)(A). Petitioner did not attempt to withdraw his October 29, 2010 guilty plea or pursue a direct appeal of the conviction. Therefore, the judgment against him became final thirty days after its entry, on November 28, 2010. *See State v. Green*, 106 S.W.3d 646, 650 (Tenn. 2003) (finding that, in Tennessee, "a judgment of conviction upon a guilty plea becomes a final judgment thirty days after entry," allowing that time for a defendant who waives his right to appeal to file a motion to withdraw the previously entered plea). The running of the limitations period is counted from the following day, November 29, 2010. *See* Fed. R. Civ. P. 6(a)(1)(A) (when computing a time period "stated in days or a longer unit of time . . . exclude the

day of the event that triggers the period"); *Bronaugh v. Ohio*, 235 F.3d 280, 284 (6th Cir. 2000) (applying Rule 6(a)'s standards for computing periods of time to habeas filing). Petitioner's time for filing a petition for federal habeas relief expired one year later, on November 29, 2011.

On April 28, 2021, more than nine years after the limitations period expired, Petitioner signed his federal habeas petition and accomplished its filing by delivering it to prison authorities for mailing to the Court. *See Pratt v. Kowalski*, No. 19-1142, 2019 WL 7938069, at *3 (6th Cir. Nov. 13, 2019) (stating that "a habeas petition is deemed filed on the date that it is handed to prison authorities for mailing," and "the date on which a prisoner signs his petition can be deemed the date that he handed it over . . . for mailing") (citations omitted). Clearly, Petitioner's filing in this Court was not timely. The only remaining issue is whether the Court should nonetheless reach the merits of the petition based on a finding that the limitations period should be tolled, after it began to run, as a matter of equity based on Petitioner's inability to speak or understand English.

II. Equitable Tolling

The expiration of the statutory limitations period does not act as a jurisdictional bar to habeas relief, and so the limitations period may be equitably tolled in appropriate cases. *Holland*, 560 U.S. at 645–49. The doctrine of equitable tolling is used sparingly and is typically applied "only when a litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003) (citing *Graham–Humphreys v. Memphis Brooks Museum of Art*, 209 F.3d 552, 560–61 (6th Cir. 2000)). It is Petitioner's burden to show that he is entitled to equitable tolling, *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002), a burden he may carry by showing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented

timely filing." *Holland*, 560 U.S. at 649; *see also Stiltner v. Hart*, 657 F. App'x 513, 520 (6th Cir. 2016).

Petitioner argues that he diligently pursued his rights by diligently seeking proficiency with English, so as to be capable of reading and understanding the documents produced by the State in his criminal case. He asserts that he was diligent in attempting to master the English language despite the unavailability of teachers or translators in the prisons where he was housed but was unable to discover counsel's misrepresentation until this year. (*See* Doc. No. 12 at 1–3; Doc. No. 10 at 1.) Petitioner gives the following account of his struggle to learn the English language, in an attempt to show extraordinary circumstances that prevented his timely filing:

> After his conviction he was sent to Morgan County for classification. There were a lot of Spanish speaking inmates and none of them spoke good English or knew much about the law. There were no legal advisers that spoke Spanish who he could ask for help[.] [A]fter several months they sent him to Hard[e]man County facility in Whiteville[,] Tennessee. There he encountered an even worse situation which he had to endure for over two years. In 2012 he was sent to DeBerry Special Needs Facility as a staff worker. When he got to DeBerry there was a G.E.D. class that was voluntary so he went but was unsuccessful because they did not have Spanish material for him to work with nor was the teacher able to help for lack of the ability to speak Spanish. One year went by and with no one graduating in the class due to lack of effort or drive on the Teachers behalf then the teacher retired. There was no G.E.D. class from 2014 till 2017 due to not having any teachers to teach the class. When a new teacher came and they started the classes back up it was voluntary and again he went right away to try and learn. The new teacher was very good and patient and took her time teaching him to read, write and speak English. He started learning and understanding and in nine mo[n]ths he passed all of the tests except reading. Then the teacher was terminated from her job[.] In 2018 Mrs. Woodard came here at DeBerry as the new teacher and she helped him until he graduated in June of 2018. His English was improving and he continued to learn and understand more and more of what he was reading. The pandemic hit in 2020 and shut everything down for quite some time but during this time he continued to learn and study and in April of 2021 he finally understood everything that his indictment says so at that point he wrote to the courts asking for help. The federal court sent back an[ ] application for habeas corpus to be filled out and sent back to the courts which he did right away.

(Doc. No. 12 at 2–3.)

Certainly, Petitioner is to be applauded for pursuing his education while incarcerated, and for his commitment to achieving his goal of earning his General Equivalency Diploma (GED). (*See* Doc. No. 12 at 5–59.) However, the proof of this diligence toward educational achievement does not suffice to show that Petitioner pursued his *legal rights* with reasonable diligence. In this critical regard, Petitioner simply claims that he could not communicate any concern over the legality of his conviction to anyone who could help him obtain and review his criminal discovery for the two years he was incarcerated in Morgan County and Hardeman County. He does not explicitly allege that the same conditions obtained at DeBerry Special Needs Facility, where he arrived in 2012; rather, he asserts that the teaching of the GED curriculum there was either of poor quality or nonexistent for roughly five years, until 2017. (*Id.* at 2–3.)

The running of the limitations period will not wait on a non-English speaking inmate to achieve full fluency and facility with the English language. *See generally Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (finding that "[a]n inability to speak, write and/or understand English, in and of itself, does not automatically give a petitioner reasonable cause for failing to know about the legal requirements for filing his claims"). Rather, "an inmate colorably asserts entitlement to equitable tolling when he alleges that 'he is wholly incapable of reading, writing, or speaking English,'" with a concomitant lack of access to Spanish legal materials or the assistance of a Spanish-speaking legal aide. *Dorantes v. Genovese*, No. 3:19-cv-00543, 2019 WL 6524888, at *3 (M.D. Tenn. Dec. 3, 2019) (quoting *Planes v. Berghuis*, No. 07-cv-14000, 2009 WL 2382006, at *5 (E.D. Mich. July 31, 2009)). Petitioner's showing fails to meet this standard for a sufficient length of time to render his April 2021 habeas filing timely. *See Bryant*, 274 F. Supp. 3d at 181 ("[w]orking backwards timewise" from date petition filed to establish cutoff date for timeliness). Even if he could establish entitlement to equitable tolling beyond 2012, Petitioner

states in his sur-reply that when he earned his GED in June of 2018, "[h]is English was improving and he continued to learn and understand more and more of what he was reading." (Doc. No. 12 at 3.) Though it may not have been until "April of 2021 [that] he finally understood everything" sufficiently to recognize his habeas claim and file what the Court notes to be a cogent, well-articulated petition (*id.*), the fact that Petitioner had not yet achieved his *current level* of facility with the English language when he earned his GED in 2018 does not mean that he was wholly incapable of understanding the language at that point and thus unable to review his criminal case or at least seek assistance with filing a habeas petition. *See Roccisano v. United States*, 936 F. Supp. 96, 100 (S.D.N.Y. 1996), *aff'd*, 1998 WL 382600 (2d Cir. May 5, 1998) (cited with approval in *Cobas*, 306 F.3d at 404) (finding that alleged language barrier did not prejudice petitioner's habeas filing, since "[e]ven if Petitioner [could] not prepare his own petition, he could communicate well enough with the person who did so").

In sum, even giving Petitioner the benefit of the doubt regarding the existence of extraordinary circumstances interfering with his ability to file at any time prior to June 2018, he has failed to carry his burden of showing that, despite his diligent pursuit of his legal rights, such circumstances continued to prevent his recognition and assertion of a right to habeas relief during the second half of 2018, all of 2019, and the first half of 2020, up until one year before his petition was ultimately filed. The Court therefore finds that Petitioner is not entitled to a period of equitable tolling sufficient to render his April 2021 filing timely.

Finally, Petitioner makes no claim of actual innocence of the charge of conviction, such that the Court could reach the merits of his petition despite its untimeliness. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (allowing that actual innocence can operate in rare cases as an "equitable exception to § 2244(d)(1)," rather than grounds for tolling).

## CONCLUSION

For the reasons stated above, Respondent's Motion to Dismiss (Doc. No. 8) is **GRANTED**. In view of its untimely filing, the petition for writ of habeas corpus (Doc. No. 1) is **DENIED** and this action is **DISMISSED**.

Because this constitutes a "final order adverse to" Petitioner, the Court must "issue or deny a certificate of appealability." Habeas Rule 11(a). A certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where, as here, a habeas petition is "denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 253 (6th Cir. 2017) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Because reasonable jurists could not find it debatable that the Court is correct in its procedural ruling under the circumstances presented here, the Court declines to issue a certificate of appealability in this case. Petitioner may, however, seek a certificate of appealability directly from the Sixth Circuit Court of Appeals. Fed. R. App. P. 22(b)(1).

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

IT IS SO ORDERED.

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE